# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VSEVOLOD GARANIN, et al.** | : | **Civil No. 3:19-CV-1275** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| v. | : | |
| | : | |
| **CITY OF SCRANTON, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM OPINION</u>

## I.   <u>Introduction</u>

Pending before the court is the defendants' motion to dismiss the plaintiffs' amended complaint. (Doc. 25). This is the second civil action before us filed by Vsevolod Garanin and his associated entities against the City of Scranton and others, and in deciding the instant motion, we certainly do not write upon a blank slate. Indeed, Plaintiff Garanin brought this action in July of 2019, and brought a similar action in November of 2014. <u>Garanin v. City of Scranton Dept. of Licensing, Inspections and Permits, et al.</u>, 3:14-CV-2129.

Plaintiff Garanin is a Scranton-area businessman, owning a controlling share in Garanin Properties LLC, the parent company holding Auric Investment Holdings LLC ("Auric"), Ferndrive LLC ("Ferndrive"), and Rock Property Holdings LLC

("Rock Property"), the co-plaintiffs in this case. These wholly-owned subsidiaries own the properties which give rise to Garanin's disputes in this second complaint, including 300-302 William Street, 126-128 School Street, 614 Willow Street, and 1208-1210 Philo Street. The defendants in this case are William Courtright, the former mayor of the City of Scranton; Patrick Hinton, the former Director of the City of Scranton's Department of Licensing, Inspections, and Permits; Lori Uher, the Officer of Rental Registration for the City's Department of Licensing, Inspections, and Permits; Tamilyn Carmona, a Code Enforcement Officer for the City's Department of Licensing, Inspections, and Permits; and the City of Scranton. All defendants worked for the City during all pertinent portions of the plaintiffs' complaint.

Previously the defendants moved to dismiss the complaint or, in the alternative, to consolidate this action with Garanin's prior lawsuit. We granted the motion in part, dismissing several of the plaintiffs' claims without prejudice to the filing of an amended complaint. (Doc. 19). Garanin then filed an amended complaint, which is now the operative pleading in this case. (Doc. 22). The defendants subsequently filed the instant motion to dismiss, arguing that the several of the plaintiffs' claims should be dismissed as to certain defendants. (Doc. 25).

After consideration, we agree with the defendants that the plaintiffs have not alleged sufficient facts to state a claim for relief against certain defendants with

respect to the plaintiffs' procedural due process, Fourth Amendment, malicious prosecution, and state law tort claims. However, we find that the plaintiff has stated a malicious prosecution claim based upon a narrow and specific set of facts. Accordingly, for the following reasons, the motion to dismiss will be granted in part and denied in part.

## II.  **Background**

In the eight-count amended complaint presently before us, Garanin sets forth several claims under 42 U.S.C. § 1983 for violations of procedural and substantive due process rights, equal protection, the First Amendment, and protections against unreasonable searches and seizures. In addition, the complaint sets forth claims for Monell[1] liability, state law malicious prosecution, and tortious interference with existing and prospective business and contractual relationships. For purposes of the instant motion, the defendants contest only four of these claims—the procedural due process claim (Count I) brought against Defendant Courtright; the Fourth Amendment search and seizure claim (Count V) brought against Defendants Courtright and Carmona; the state law malicious prosecution claim (Count VII) against Defendants Courtright, Hinton and Carmona; and the claim for tortious interference (Count VIII) against Defendant Courtright.[2]

---

[1] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

[2] As we will explain, the plaintiffs have conceded to the dismissal of several claims against several individual defendants. (Doc. 54, at 5-6).

The facts underlying these claims in the plaintiffs' amended complaint are as follows:

According to the amended complaint, Garanin, through Auric, entered into a contract to replace the roof at the William Street property in September 2018. (Doc. 22, ¶ 24). Auric was issued a permit in October 2018 to remove and replace the roof of the William Street property. (Id., ¶ 26). However, on October 21, 2018, the City condemned the William Street property after City officials allegedly mischaracterized the state of the property, including the roof. (Id., ¶¶ 27, 30). Garanin, on behalf of Auric, appealed the condemnation to the Housing Appeals Board, but the condemnation was ultimately upheld on December 4, 2018. (Id., ¶¶ 31, 34). Garanin immediately appealed to the Lackawanna County Court of Common pleas, and as of the date the amended complaint was filed, the appeal was still pending. (Id., ¶ 36). During the pendency of the appeal, Defendant Hinton allegedly directed PPL to removed four electric meters from the property. (Id., ¶ 32). In addition, it is alleged that after the condemnation, City officials harassed the tenants to vacate the property, even though the appeal was still pending. (Id., ¶ 37).

Thus, in January and February of 2019, the City fined Auric twice for Prohibited Occupancy. (Id., ¶¶ 43-44). Auric was ultimately found not guilty of the January 2019 citation, but was found guilty of the February 2019 citation. (Id., ¶¶

43,45).[3] In addition to these citations, Garanin alleges a host of other roadblocks perpetrated by the defendants that hindered the reopening of the condemned William Street property. (Id., ¶¶ 51-68). These roadblocks included Inspector Carmona's alleged surveillance of the William Street property and search of the business records related to the property. (Id., ¶¶ 51-53).

The amended complaint further alleges that Ferndrive's School Street property remained condemned due to Defendant Hinton arbitrarily denying a permit to release the property from condemnation. (Id., ¶ 70). The plaintiffs assert that Hinton withheld the permit on the basis of unpaid rental registration fees, which the complaint alleges is not grounds to deny a permit under the City's ordinances. (Id., ¶¶ 70-73).

As to the Willow Street property, the plaintiffs allege that in January of 2019, Defendant Uher and the City closed this property without any warning due to complaints about heating in the building. (Id., ¶¶ 77, 79). According to the complaint, no inspection was ever performed to determine whether there was an issue with the heating or any other hazardous conditions. (Id., ¶¶ 78, 83). Thus, the

---

[3] At the time the amended complaint was filed, the February 2019 citation, of which Auric was found guilty in the Lackawanna County Court of Common Pleas, was on appeal to the Pennsylvania Superior Court. However, on March 9, 2021, the Superior Court upheld the Common Pleas Court's finding of guilty regarding the February 2019 Prohibited Occupancy citation. Commonwealth of Pa. v. Auric Investment Holdings LLC, CP-35-0000081-2019.

plaintiffs contend that the City violated the International Property Maintenance Code, which requires written notice by the City and a reasonable period of time to cure the problem. (Id., ¶ 84). Ferndrive filed an application with the City Housing Appeals Board and requested a hearing, but that hearing was allegedly delayed by Hinton, who would not accept a signature of Ferndrive's authorized agent. (Id., ¶¶ 87, 89-90). Finally, a hearing was held on May 16, 2019, during which the Board upheld the City's decision to close the property. (Id., ¶ 91). Ferndrive appealed to the Court of Common Pleas, and that appeal was still pending as of the date the amended complaint was filed. (Id., ¶ 92-93).

Finally, as to the Philo Street property, the complaint alleges that Defendant Carmona condemned the property after UGI had red-tagged a furnace in the second-floor unit. (Id., ¶ 95). This condemnation occurred without any notice to Rock Property or opportunity to cure the defect, and without a hearing in accordance with the Property Maintenance Code. (Id., ¶ 105). While the complaint concedes that a hearing is not required "if there is an immediate health and safety risk," it is asserted that the red-tagging of the furnace remedied any immediate health or safety concern. (Id., ¶¶ 108-09). Rock Property appealed the decision to the Appeals Board, but as with the Willow Street Property, it is alleged that Hinton delayed a hearing on the matter by refusing to accept the signature of Rock Property's authorized agent. (Id., ¶ 113). A hearing was held on May 16, 2019, and the Board upheld the City's

decision. (Id., ¶ 114). Rock Property appealed to the Court of Common Pleas, and as of the date of the amended complaint, this appeal was still pending. (Id., ¶ 115).

In addition, scattered throughout the amended complaint are allegations that Defendant Courtright, as former mayor of Scranton, was the final policymaker for the City. (Id., ¶¶ 69, 76, 94, 149). Thus, the complaint seems to assert that Defendant Courtright is liable for the actions of the other individual defendants, who were officials in departments that the mayor supervised. The complaint further attempts to place liability on Defendant Courtright by endeavoring to link his federal criminal guilty plea in July of 2019 to the incidents alleged in the amended complaint. (Id., ¶¶ 150-54, 162).

Thus, the plaintiffs brought this civil rights action on July 23, 2019 and filed an amended complaint on January 7, 2020, asserting violations of procedural and substantive due process, equal protection, the First Amendment, and protections against unreasonable searches and seizures. In addition, the complaint sets forth claims for Monell liability, malicious prosecution, and tortious interference with existing and prospective business and contractual relationships.

The defendants have now moved to dismiss several claims against the individual defendants in this case, arguing that the plaintiffs have failed to allege facts sufficient to establish their claims. (Doc. 25). On this score, the plaintiffs have conceded that the following claims should be dismissed as to the following

defendants: Count I against Defendants Uher and Oleski as to the William Street property, and Defendants Carmona and Oleski as to the Willow Street property; Count V against Defendants Uher and Oleski as to the William Street property, Defendants Carmona, Uher, and Oleski as to the School Street property, and Defendants Carmona and Oleski as to the Willow Street property; and Count VII against Defendants Uher and Oleski as to the William Street property. Thus, these claims will be dismissed as to these defendants.

Accordingly, the defendants contest only the following four claims—the procedural due process claim (Count I) brought against Defendant Courtright; the Fourth Amendment search and seizure claim (Count V) brought against Defendants Courtright and Carmona; the state law malicious prosecution claim (Count VII) against Defendants Courtright, Hinton and Carmona; and the claim for tortious interference (Count VIII) against Defendant Courtright. On this score, the defendants argue that the plaintiffs have not set forth any facts showing that Defendant Courtright had personal involvement in the property disputes. Moreover, they contend that Defendant Carmona's actions with respect to the William Street property did not constitute a search in violation of the Fourth Amendment. Finally, they assert that the plaintiffs have failed to state a claim for malicious prosecution as a matter of law.

After consideration, we agree with the defendants that the amended complaint fails to allege facts sufficient to state a procedural due process, Fourth Amendment, malicious prosecution, and state law tort claim against Defendant Courtright. We further find that the plaintiff has failed to state a Fourth Amendment claim against Defendant Carmona. Finally, we find that the plaintiffs have failed to state a malicious prosecution claim based on the condemnation of the William Street property and the February 2019 Prohibited Occupancy citation, but that the malicious prosecution claim based on the January 2019 prohibited occupancy citation should proceed forward. Accordingly, the motion to dismiss will be granted in part and denied in part.

## II.   <u>Discussion</u>

### A.   <u>Motion to Dismiss—Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell</u>

> Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our
> opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.
> 2008)], and culminating recently with the Supreme Court's decision in
> Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards
> have seemingly shifted from simple notice pleading to a more
> heightened form of pleading, requiring a plaintiff to plead more than
> the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of <u>Twombly</u>, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

11

District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

12

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting

Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic

document[s] that a defendant attached as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the [attached] documents." Pension Benefit Guar.

Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover,

"documents whose contents are alleged in the complaint and whose authenticity no

party questions, but which are not physically attached to the pleading, may be

considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir.

2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002)

(holding that "[a]lthough a district court may not consider matters extraneous to the

pleadings, a document integral to or explicitly relied upon in the complaint may be

considered without converting the motion to dismiss in one for summary

judgment"). However, the court may not rely on other parts of the record in

determining a motion to dismiss, or when determining whether a proposed amended

complaint is futile because it fails to state a claim upon which relief may be granted.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

**B.**   **The Claims Against Defendant Courtright in Counts I, V, VII and VIII Will Be Dismissed.**

The defendants' motion asserts that the procedural due process, search and seizure, malicious prosecution and tortious interference claims against former Mayor Courtright should be dismissed. We agree.

As we have noted, the only allegations in the complaint that involve Defendant Courtright assert that he was the final policymaker for the City as the mayor, and thus, should be liable for the actions of the other individual defendants with respect to these claims. Notably absent from the complaint are well-pleaded facts showing that Courtright directed, approved or acquiesced in the specific actions which form the gravamen of this complaint. With respect to the claims brought under § 1983—procedural due process and unlawful search and seizure—more is needed.

Indeed, to state a § 1983 claim against a supervisory defendant, a plaintiff must show that this supervisory defendant actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir. 1997); see also Maine v. Thiboutot, 448 U.S. 1, 4, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980). It is well settled that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Applying these

14

benchmarks, courts have frequently held that, without allegations of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against a supervisor based upon the misdeeds of his subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, at *21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004).

With respect to supervisory liability claims, the Third Circuit has noted that "[n]umerous courts, including this one, have expressed uncertainty as to the viability and scope of supervisory liability after Iqbal." Bistrian v. Levi, 696 F.3d 352, 366 n. 5 (3d Cir. 2012) (internal quotations and citations omitted). To the extent that supervisory liability survives after Iqbal, the scope of that liability is clearly and narrowly defined. On this score, there are two theories of supervisory liability which the Court of Appeals has recognized:

> [O]ne under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly cause [the] constitutional harm" and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (second alteration in original).

Santiago, 629 F.3d at 129.

To incur liability as a supervisory official, it "is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118

(3d Cir. 1989).  The imposition of liability in a § 1983 action relies on a showing by the plaintiff that the defendant had "personal involvement in the alleged wrongs." Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)).  Importantly, a plaintiff "cannot predicate defendants' liability on a *respondeat superior* theory." Id.

Rather, as we have explained, to state a valid cause of action, the plaintiff must demonstrate the defendants' "personal involvement in the alleged wrongs." Chavarriaga, 806 F.3d at 222 (quoting Rode, 845 F.2d at 1207) (internal quotations omitted). To set forth sufficient allegations of defendants' personal involvement, the plaintiff must describe "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." Id. Allegations of constructive knowledge are not enough. Id. (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995)); Rode, 845 F.2d at 1201 n. 6. Instead, a plaintiff "must portray specific conduct by state officials which violates some constitutional right." Gittlemacker v. Prasse, 428 F.2d 1, 3 (3d Cir. 1970).

On this score, viewing the complaint in a light favorable to the plaintiffs, we find that the complaint has not sufficiently alleged facts to impose liability on Defendant Courtright under § 1983. Rather, the complaint merely states and restates the conclusory allegation that Defendant Courtright, as the former mayor of Scranton, was the final policymaker for the City. (Doc. 22, ¶¶ 69, 76, 94, 149). The

complaint fails to allege any specific conduct by Courtright from which we could infer that he was personally involved in the alleged wrongs with respect to Plaintiff Garanin's property disputes.[4] Instead, it appears that the plaintiffs are trying to impose liability upon Defendant Courtright under a theory of *respondeat superior*. This they cannot do. Accordingly, we will dismiss the § 1983 claims in Counts I and V as to Defendant Courtright.

In addition, we find that the plaintiffs have failed to state a malicious prosecution claim against Defendant Courtright. In order to establish and ultimately prevail on a claim for malicious prosecution in Pennsylvania, a plaintiff must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Bristow v. Clevenger, 80 F.Supp.2d 421, 432 (M.D. Pa. 2000) (quoting Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)); Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993). On this score, the amended complaint fails to allege facts from which we could infer that Defendant Courtright initiated the

---

[4] The plaintiffs also attempt to use Defendant Courtright's federal criminal guilty plea in any unrelated case as a basis for civil liability. We note, however, that this type of transitive property of civil liability which would impute wrongdoing in one case based upon misconduct in another case, is not recognized by the courts.  Further, there is nothing in the amended complaint which establishes that this criminal guilty plea is related to the instant civil rights lawsuit.

criminal proceedings against them. As we have noted, the allegations against Defendant Courtright are conclusory and amount to an assertion that Courtright, as the former Mayor, was the final policymaker for the City. These bare allegations are insufficient for us to conclude that Courtright was involved in any way in the proceedings against the plaintiffs. Accordingly, this claim will be dismissed as to Defendant Courtright.

Finally, the plaintiffs have failed to allege sufficient facts to state a claim against Defendant Courtright for tortious interference with existing or prospective business and contractual relationships. In Pennsylvania, a person may be liable if he intentionally interferes with the performance of a contract between the plaintiff and a third party, which causes the third party to refrain from performing the contract. Walnut Street Assoc., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009). Thus,

> The necessary elements of the cause of actions are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of the defendant's conduct.

Id. (citations omitted). In addition, a defendant may be liable for interfering with a prospective, as well as existing, contractual relationship, if he acts to intentionally prevent the prospective relationship from occurring. Maverick Steel CO., L.L.C. v. Dick Corp./Barton Malow, 54 A.3d 352, 355 (Pa. Super. Ct. 2012).

Here, as we have explained with respect to the § 1983 claims, the plaintiffs have failed to plead any facts from which we could even infer that Defendant Courtright engaged in specific conduct with the intent to interfere with the plaintiffs' business relations, existing or prospective. The complaint does not allege that Defendant Courtright took any action to either interfere with the plaintiffs' existing business relationships or to prevent the occurrence of new business relationships. Rather, the complaint merely asserts bare allegations that Courtright, as the former mayor, was responsible for policymaking for the City. Accordingly, this claim against Defendant Courtright will be dismissed.

### C. The Fourth Amendment Claim in Count V against Defendant Carmona Regarding the Alleged Search of the William Street Property Will Be Dismissed.

As we have noted, the plaintiffs have conceded the dismissal of several defendants related to their Fourth Amendment claims concerning the William Street, School Street, and Willow Street properties. We have also determined that this claim fails with respect to Defendant Courtright, as the plaintiffs have not sufficiently pleaded facts to show his personal involvement. Thus, the plaintiffs' remaining Fourth Amendment Claim against Defendant Carmona is based on Carmona's alleged surveillance of the William Street property and her knowledge related to the tenants at the William Street property, which the plaintiffs allege constituted a *de facto* search in violation of the Fourth Amendment.

19

As we explained when analyzing this claim in our prior Memorandum Opinion, the Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "Administrative searches, such as for code and zoning enforcement, can constitute 'significant intrusions upon the interests protected by the Fourth Amendment . . . .' " Lease v. Fishel, 2010 WL 1390607, at *7 (M.D. Pa. Mar. 31, 2010) (citing Camara v. Mun. Court of City and County of San Francisco, 387 U.S. 523, 534, 87 S. Ct. 1727, 18 L. Ed.2d 930 (1967)). The threshold inquiry for such a claim is whether the government's conduct amounted to a "search." Id. (citing United States v. Hartwell, 436 F.3d 174, 177 (3d Cir. 2006)). A search occurs for Fourth Amendment purposes when "the government violates a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) (citing Katz v. United States, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring)).

The Supreme Court has also taken up the question of the propriety of administrative searches:

> Though there has been general agreement as to the fundamental purpose of the Fourth Amendment, translation of the abstract prohibition against 'unreasonable searches and seizures' into workable guidelines for the decision of particular cases is a difficult task which has for many years divided the members of this Court. Nevertheless, one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is

'unreasonable' unless it has been authorized by a valid search warrant. See, e.g., Stoner v. State of California, 376 U.S. 483, 84 S. Ct. 889, 11 L.Ed.2d 856; United States v. Jeffers, 342 U.S. 48, 72 S. Ct. 93, 96 L.Ed. 59; McDonald v. United States, 335 U.S. 451, 69 S. Ct. 191, 93 L.Ed. 153; Agnello v. United States, 269 U.S. 20, 46 S. Ct. 4, 70 L.Ed. 145. As the Court explained in Johnson v. United States, 333 U.S. 10, 14, 68 S. Ct. 367, 369, 92 L.Ed. 436:

> 'The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent.'

Camara v. Municipal Court of the City & County of San Francisco, 387 U.S. 523, 528-29, 87 S. Ct. 1727, 18 L.Ed.2d 930 (1967). Further, administrative searches "authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual[,]" and are thus "significant intrusions upon the interests protected by the Fourth Amendment[.]"

The Court qualified its decision, however, noting that:

> Since our holding emphasizes the controlling standard of reasonableness, nothing we say today is intended to foreclose prompt inspections, even without a warrant, that the law has traditionally upheld in emergency situations. See North American Cold Storage Co. v. City of Chicago, 211 U.S. 306, 29 S. Ct. 101, 53 L.Ed. 195, 6 Ohio L. Rep. 665 (seizure of unwholesome food); Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 25 S. Ct. 358, 49 L.Ed. 643 (compulsory smallpox vaccination); Compagnie Francaise de Navigation a Vapeur v. Louisiana State Board of Health, 186 U.S. 380, 22 S. Ct. 811, 46 L.Ed. 1209 (health quarantine); Kroplin v. Truax, 119 Ohio St. 610, 7 Ohio Law Abs. 110, 165 N.E. 498 (summary

destruction of tubercular cattle). On the other hand, in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry. Similarly, the requirement of a warrant procedure does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect.

Id. at 539-40.

Thus, as we explained with respect to this claim as it was pleaded in the plaintiffs' original complaint, there was an ambiguity as to the nature and extent of Defendant Carmona's alleged surveillance of the property, and thus, whether "the government violate[d] a subjective expectation of privacy that society recognizes as reasonable." Kyllo v. United States, 533 U.S. 27, 33, 121 S. Ct. 2038, 150 L. Ed. 2d 94 (2001) (citing Katz v. United States, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring)). In dismissing the plaintiffs' claim without prejudice to amending this claim against Carmona, we reasoned that:

For instance, if Defendant Carmona merely walked or drove down William Street each day, or perhaps multiple times per day, while intentionally and deliberately passing the plaintiffs' property each time she did so, we would have no grounds to find a constitutional violation since society neither expects nor anticipates that the exterior of a property is private. However, if Defendant Carmona set up cameras or recording devices inside this property, then we would have the kind of violation cognizable under the constitution.

22

(Doc. 19, at 40). Accordingly, we dismissed this claim but gave the plaintiffs an opportunity to amend the complaint to state a claim against Defendant Carmona regarding her surveillance of the property. (Id.)

However, after a review of the plaintiffs' amended complaint, we find that the plaintiff has not set forth sufficient allegations to remedy the deficiencies we outlined in our prior Memorandum Opinion. In fact, the plaintiffs have not added any well-pleaded facts regarding Carmona's surveillance of the William Street property. The amended complaint merely reiterates the same allegations: that "INSPECTOR CARMONA constantly surveilled the WILLIAM STREET PROPERTY and its tenants"; that "INSPECTOR CARMONA testified that she continuously visited the WILLIAM STREET PROPERTY and saw individuals coming out of the property consistently"; and that "INSPECTOR CARMONA continuously monitored the WILLIAM STREET PROPERTY from the date of its condemnation and up to the June 5, 2019 Magisterial District Court hearing." (Doc. 22, ¶¶ 49, 51, 54). Thus, the plaintiffs have failed to shed any light on the nature and extent of the alleged surveillance of the William Street property by Inspector Carmona. Accordingly, we find that the amended complaint fails to state a claim for an unlawful search under the Fourth Amendment as to Defendant Carmona and the William Street property, and this claim will be dismissed.

As to the claim that Carmona's knowledge of the tenants and dates of their tenancies amounted to a *de facto* search in violation of the Fourth Amendment, the amended complaint alleges that "INSPECTOR CARMONA knew the status of each tenant and dates of tenancy for each tenant of the WILLIAM STREET PROPERTY," and that this knowledge constituted "a de facto search as it is not the day-to-day job responsibilities of housing inspectors to examine tenancies and their histories." (Doc. 22, ¶¶ 52-53). Notably however, the amended complaint does not allege that Carmona actually performed a search of Auric's business records concerning the William Street property and its tenants. The complaint merely asserts that Carmona's knowledge of these tenancies was an "intrusion into the business activities of AURIC at the WILLIAM STREET PROPERTY." (Id., ¶ 53).

Thus, in our view, with respect to the Fourth amendment claim against Carmona the amended complaint does no more than set forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. This is simply not enough to survive a motion to dismiss. Accordingly, we find that this claim fails as a matter of law and will be dismissed.

**D.** **The Defendants' Motion to Dismiss Count VII of the Plaintiffs' Complaint for Malicious Prosecution is Granted With Respect to the February 2019 Citation, but Denied as to the January 2019 Citation.**

Finally, the defendants contend that the plaintiffs have not adequately pleaded a claim against them for malicious prosecution under Pennsylvania law. The

24

plaintiffs contend that the defendants maliciously prosecuted them when they condemned the William Street property and issued citations for prohibited occupancy of that property. (Doc. 22, ¶ 235).

The plaintiffs assert their claim for malicious prosecution pursuant to Pennsylvania law. As we have explained, in order to establish and ultimately prevail on a claim for malicious prosecution in Pennsylvania, a plaintiff must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." Bristow v. Clevenger, 80 F.Supp.2d 421, 432 (M.D. Pa. 2000) (quoting Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996)); Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993).

At the outset, we note that to the extent the plaintiffs are bringing this claim with respect to the condemnation of the William Street property, this claim fails as a matter of law, as condemnation is a civil, rather than a criminal, proceeding. Moreover, with respect to the citation issued in February of 2019, the plaintiffs plainly cannot meet the second element of the cause of action—favorable termination. Auric was adjudicated guilty of this citation in the Lackawanna Court of Common Pleas on November 12, 2019. Commw. of Pa. v. Auric Investment Holdings LLC, CP-35-SA-0000081-2019. Auric appealed, and on March 9, 2021,

the Superior Court upheld the guilty adjudication. Id. Accordingly, the plaintiffs cannot meet the favorable termination element as it pertains to the February 2019 citation.

However, with respect to the January 2019 citation, Auric was adjudicated not guilty on June 5, 2019. (Doc. 22-1, Ex. 11, at 92). Thus, the plaintiffs meet the favorable termination element for a malicious prosecution claim based on this citation. Moreover, while the defendants contend that there was probable cause to issue the prohibited occupancy citation, and although in a malicious prosecution case the question of probable cause is a question to be answered by the court, Bristow v. Clevenger, 80 F.Supp.2d 421, 434 (M.D. Pa. 2000), where that question "depends upon disputed issues of fact, the court should submit the factual disputes to the jury, and then make the probable cause determination based upon the jury's findings." Id. (citations omitted). Here, the plaintiffs dispute that there was probable cause to issue the prohibited occupancy citation because the appeal of the condemnation of the William Street property stayed enforcement of the condemnation. (Doc. 22, ¶ 48). Thus, they contend that there was no probable cause to issue the citation. Accordingly, given that there is a factual dispute as to the issue of probable cause, we cannot conclude at this stage as a matter of law that there was probable cause to issue the citation. Thus, the plaintiffs' malicious prosecution claim as to the January 2019 citation will survive the instant motion to dismiss.

## III.   **Conclusion**

Accordingly, for the foregoing reasons, the defendants' partial motion to dismiss (Doc. 25) will be GRANTED IN PART and DENIED IN PART. The motion to dismiss will be GRANTED with respect to the following defendants and claims:

1. Count I is dismissed as to Defendants Uher and Oleski as to the William Street property, Defendants Carmona and Oleski as to the Willow Street property, and Defendant Courtright as to all properties;

2. Count V is dismissed as to the individual defendants;

3. Count VII is dismissed as to Defendant Courtright, and as to the claims based on the condemnation of the William Street property and the February 2019 citation for Prohibited Occupancy; and

4. Count VIII is dismissed as to Defendant Courtright.

However, the motion will be DENIED as to the malicious prosecution claim in Count VII based on the January 2019 Prohibited Occupancy citation.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

27