UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VSEVOLOD GARANIN, et al. | CIVIL ACTION-LAW |
| Plaintiffs, | No.: 3:19-CV-1275 |
| vs. | |
| CITY OF SCRANTON, et al. | |
| Defendants. | |

## PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Date: September 16, 2022

RESPECTFULLY SUBMITTED:

VSEVOLOD GARANIN
PRO SE
5 Witherspoon Way
Marlboro, NJ 07746
(917) 434-1765 - Telephone
(347) 331-0941 – Fax
Steve.Garanin@GCapHoldings.com - Email

Plaintiffs, Vsevolod Garanin, Garanin Properties LLC, Ferndrive LLC, Auric Investment Holdings LLC and Rock Property Holdings LLC, pro se, respectfully files this Sur-Reply in Opposition to Defendant's Motion to for Summary Judgment.

## I. Purported Rule 56 Violation(s)

As an initial matter, Plaintiffs are perplexed by opposing counsel's contention that Plaintiffs have failed to file a response to either Defendants Motion for Summary Judgment or Statement of Material Facts. This very procedural posture is related to the Motion for Summary Judgment and Plaintiffs filed their Opposition to Defendant's Motion for Summary Judgment timely on June 29, 2022. See Brief in Opposition ECF No. 100.

In addition, Plaintiffs succinctly listed their Counter-Statement of Material Facts in said Opposition on June 29, 2022. See Brief in Opposition ECF No. 100, pages 3-5.

Plaintiffs further file this instant Sur-Reply to Defendant's Motion for Summary Judgment pursuant to this Court's Order dated July 8, 2022 (See Order ECF No. 108) and subsequent Order dated September 6, 2022 (See Order ECF No. 105).

Plaintiff concedes that he is a pro se litigant and "[W]hile courts provide some leniency to pro se litigants when applying procedural rules" plaintiff is not even requesting any leniency. Undoubtedly plaintiff Vsevolod Garanin is not a licensed attorney in any state. However, plaintiff is no stranger to litigation and has been involved in many cases in the state courts of New York, New Jersey, Pennsylvania, Michigan, California and Florida and federal District Courts in Pennsylvania, New York and Michigan along with decisions from the Second Circuit both as a counseled party and a pro se litigant. The procedural history of this case speaks for itself as plaintiffs have not egregiously violated any Federal Rules of

Civil Procedure or the Local Rules and has worked diligently and respectfully (hopefully opposing counsel agrees) to present his case to an honorable tribunal based on the merits. Plaintiff is very capable in succinctly presenting his case to a jury of the peers in accordance with all Federal Rules of Civil Procedure and the Local Rules if the need is required.

Defendants point to two self-serving examples of how plaintiffs have not followed the procedural rules in Plaintiff's extensive 34-page Opposition to Motion for Summary Judgment. Firstly, as related to the Equal Protection claim, defendants are requesting Summary Judgment and dismissal but have completely ignored plaintiff's pleadings or the record as related to this cause of action in their Motion. Plaintiffs point to **Exhibit J** and **Exhibit K** as evidence of disparate treatment when plaintiff's properties were closed but other property owner's properties were not closed due to the same purported violations. See Brief in Opposition ECF No. 100, page 24. Accordingly, plaintiffs correctly point to Exhibits on the record that have been completely ignored by the Defendants.

Moreover, in the second purported example of plaintiff's violation of procedural rules, Defendants point to "two shot excerpts from the depositions of Lori Uher and Patrick Hinton" stating that "the facts contained in those deposition do not prove that Plaintiffs were denied due process." It remains unclear how this is a violation of procedural rules and seemingly Defendants agree that there are genuine issues of material fact as related to these "two short excerpts".

**II. Qualified Immunity**

Plaintiffs point to the record on countless occasions that after numerous attempts to put defendants on notice of their unconstitutional acts, defendants simply ignored plaintiffs

3

and continued their unconstitutional conduct. Accordingly "a reasonable official would understand that what he is doing violates that right" and hence qualified immunity is overcome. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

"[T]he qualified immunity defense shields government agents from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Behrens v. Pelletier*, 516 U.S. 299, 305 116 S. Ct. 834, 133 L.ED.2d 773 (1996).

The record is replete with defendant's bad faith, discriminatory and retaliatory actions. Specifically, and to reiterate during defendant Lori Uher's deposition on February 24, 2021, Uher was asked by plaintiff Garanin directly:

> *Q. Was this the conversation – did you say to me, all your properties are disgusting?*
> *A. I did say that one time.*

A municipal officer acting in good faith and in accordance with the law would not utilize such drastic language and berate a property owner. To the contrary, such statements are evidence of the bad faith animus defendants harbored against plaintiff and his entities operating rental properties in the City of Scranton.

In addition, the deposition of defendant Patrick Hinton is further evidence of defendant's culpable state of mind and their actions against plaintiffs with scienter. To reiterate, defendant Hinton attempted to change his prior testimony in open court. During the Scranton Housing Appeals Board hearing on November 29, 2018, Hinton testified in front of the Scranton Housing Appeals Board as related to the William Street property with the transcript being part of the record:

> *"In regards to the roof [at the William Street property]; yes, when the roof was initially started they started the roof without a permit. We had to issue a stop*

*work order and fine to make them come in and get the permit. In around <u>October 16 [2018]</u> inspector Sunday was there to issue a stop work order because there was no permit."*

After being questioned as to his previous November 29, 2018 testimony before the Scranton Housing Appeals Board during the February 21, 2021 deposition in this instant case and as clearly part of the record, defendant Patrick Hinton attempted to change his prior testimony:

> *Q. Does this contradict what we just discussed about permit being issued on <u>October 3, 2018</u>?*
> *A. Well I don't know if I would say contradict. I know it was an oversight at the time.*
> *Q. An oversight? What do you mean; this is an error?*
> *A. During the testimony yes, it was believed at the time – I believe there was a discrepancy with the property. The address of the property when it was – we had a call about work being done, or something to that effect of this property. When or more of the employees looked in our permitting system whether or not there had been a permit issued, it came up there was no permit issued. But I know there was some kind of discrepancy with the address. It was my understanding there was no permit issued when, in fact, there was. So when I say that that is what I mean as an oversight or error on my part thinking there was no permit at the time.*

See Brief in Opposition ECF No. 100, Exhibit A, **Exhibit A -** p. 17, lines 1-18.

The above attempted turnaround as to why the William Street property was condemned in the first place by defendant Patrick Hinton is evidence of bad faith behavior on behalf of the City defendants. This court should not entertain the defendant's excuses of "oversight" or "discrepancy" when a very serious unconstitutional deprivation of property rights has taken place. At the least, summary judgment must be denied and a jury of the peers should be afforded an opportunity to decide whether such excuses hold weight or not.

5

### III. Procedural Due Process

The record is clear and defendants do not deny that a pre-deprivation hearing was never provided as related to the closure of any of the properties (whether pursuant to the condemnation ordinance and / or the rental registration ordinance). Defendants' contention that *Fuentes v. Shevin* 407 U.S. 67 (1972) is not applicable is completely misguided. To the contrary and irrespective of the facts of each specific case, the High Court noted and ruled that seizure (emphasis added) without notice and the opportunity for a hearing in acceptable under only limited circumstances (one of them being the need for prompt action to which defendants have argued previously is applicable here because these were "emergencies"). Defendants have now purportedly changed their legal theory in now arguing that a condemnation and / or closure of properties in not a seizure. The threshold issue remains whether the purported reasons for the property seizures were indeed emergencies requiring prompt action and which would be one of the exceptions to a pre-deprivation hearing. There remain significant disputes to material fact and as such summary judgment must be denied.

### IV. Substantive Due Process

Further to the same arguments and the same record as to Procedural Due Process above, the record demonstrates conscience-shocking behavior as related to Substantive Due Process. Municipal officers authorized to seize properties never hearing of due process, berating property owners and stating to them that their properties are "disgusting," concocting stories of oversights and discrepancies to justify erroneous property seizures does indeed shock the conscience. See generally Brief in Opposition ECF No. 100 (with accompanying deposition testimony from defendants).

6

Furthermore, the record is clear that this was not a one-time incident, but continuous actions from the City of Scranton. The mere facts and the record of the Philo Street property speaks volumes i.e., with the record establishing that one unit was condemned in February 2019, then the entire building closed in April 2019, for the same building to be re-condemned again in October 2019 when it was already closed. Such municipal behavior defies logic, demonstrates a zealous desire to continuously close and condemn in retaliation when it no longer makes logical sense and shocks the conscience. Accordingly, summary judgment must be denied as there remains significant disputes to material fact as to whether the facts established by the record necessitated the consistent closure of properties without a pre-deprivation hearing and whether this consistent behavior shocks the conscience.

**V. Equal Protection**

In order to succeed on a "class of one" theory under the Equal Protection Clause, a plaintiff must establish that he or she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Adams Parking Garage, Inc.* v. City of Scranton, 171 F. Supp. 2d 417, 426 (M.D. Pa. 2001). Defendants point to testimony from plaintiff that himself and Alex Brunelle were treated similarly in having the City of Scranton Housing Appeals Board rubber stamp each closure / condemnation from the City of Scranton (being a post-deprivation hearing), confirming plaintiff's pleadings of same.

The fact that plaintiffs and Alex Brunelle were treated similarly in front of the City of Scranton Housing Appeals Board post-deprivation does not negate that the fact that

plaintiffs and other similarity situated property owners were treated disparately with no rational basis pre-deprivation.

Furthermore and glaringly, and since the commencement of this action, defendants continue to completely ignore and not address the on the record evidence of disparate treatment as related to the closure of properties pre-deprivation. Specifically, plaintiffs present two very specific examples of disparate treatment pre-deprivation of plaintiff's properties and non-plaintiff properties located at 1930 Bristol Ct. Scranton, PA and 722 N. Main Avenue, Scranton PA. See Brief in Opposition ECF No. 100, plaintiff marked Exhibit J and Exhibit K. As defendants are requesting summary judgment on the Equal Protectional claim but do not address the disparate treatment and / or rational basis for it pre-deprivation, there remains significant disputes to material fact as to why this disparate treatment happened and summary judgment must be denied.

### VI. First Amendment Claim

As related to the School Street property, the record establishes constitutionally protected conduct in filing appeals with the Scranton Housing Appeals Board and a previous federal complaint against the City defendants. Thereafter, the record establishes that the City refused to allow for a permit to be provided for the School Street property based on the direction from Defendant Hinton because of an alleged $25.00 fee outstanding. Although the casual link between constitutionally protected conduct and the alleged retaliatory tactics are evident, there is a genuine issue of material fact whether this alleged fee is appropriate grounds to deny a permit when no such ordinance authorizes it. Accordingly, summary judgment must be denied as related to the School Street property.

8

As related to the Philo Street property the record puts forth evidence of a May 6, 2019 inspection that was rescheduled with the reason provided being an opportunity to have a post-deprivation hearing in front of the Scranton Board of Appeals (See Brief in Opposition ECF No. 100, Exhibit L) i.e. constitutionally protected conduct. Thereafter defendants misstate that the "inspection had already been rescheduled by the time Plaintiff Garanin had refused Defendant Hinton's proposed settlement offer on May 16, 2022" (See Defendant's Reply Brief ECF No. 103, p. 28) when the settlement discussions were not until May 16, 2022, same day as the post-deprivation Appeal Hearing. Furthermore, the record demonstrates that *after* the refusal to settle, Defendant Hinton engaged in retaliatory tactics to not reschedule the inspection and hence purposefully refused to reopen the property, specifically quoting Director Hinton:

    a.    On June 6, 2019 "We were recently advised per the Law Dept that rental closures are a mandatory closure of 6 months per ordinance unless reversed on an appeal. So we may have to postpone the inspection process. Let me get more clarity on this."
    b.    On July 7, 2019 "You need to call the office and scheduled the inspection."

See Brief in Opposition ECF No. 100, Exhibit L)

Notwithstanding the contradictory statements of Defendant Hinton are related to the rescheduling of the inspection (on June 6, 2019 and then July 7, 2019), the record demonstrates that there is a casual link between the constitutionally protected conduct of asserting an appeal and not agreeing to the settlement and then the retaliatory tactics of refusing to reschedule the inspection.

The record is devoid of any evidence of defendant's assertion that the "inspection had already been rescheduled by the time Plaintiff Garanin had refused Defendant Hinton's proposed settlement offer on May 16, 2022." Accordingly since there is a significant dispute as

to material facts of the alleged casual link between constitutionally protected conduct and the subsequent retaliatory tactics, summary judgment must be denied as to the Philo Street property.

As to the William Street property, plaintiffs concede that Andrew Sunday, a non-party municipal offer was issuing the prohibited occupancy citations.

### VII. Monell

As the Third Circuit explained a municipality "can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom." Mulholland v. Gov't Cnty of Berks, 706 D.3d 227, 237 (3d Cir. 2013) ((quoting Beck v. City of Pittsburgh, 89 D.3d 966, 971 (3d Cir. 1996). The record has exhaustively established an adopted policy or custom of the City of Scranton in closing properties without pre-deprivation hearings. Furthermore, now Lori Uher's own testimony, the very municipal officer tasked with implementing this policy and custom under the Rental Registration Ordinance, testifying that she was never provided any training by the Legal Department of the City of Scranton and is not familiar with the concept of due process.

As Defendants correctly state, this Court has previously recognized that Plaintiffs have alleged a Monell violation under Section 1983 against the City on the basis of an alleged failure to train. Now the record and Lori Uher's testimony confirms that not only is there a failure to train (maybe subpar training, or erroneous training), apparently there was no training at all and the fundamental concept of due process was never even mentioned (let alone explained) to Lori Uher. Thusly and by way of following logic, Lori Uher was doing "her job function" pursuant to the City of Scranton's policy and custom in depriving property owners of their constitutionally protected rights to due process.

10

As such, and in light of the genuine issue of material fact whether this was an appropriate "job function" from the City of Scranton, summary judgment must be denied as to the Monell claim.

## VIII. Tortious Interference with Existing and Prospective Business or Contractual Relationships

Defendants are mostly correct in stating that the "undisputed evidence of record has established Plaintiffs sold all the properties that are at issue in the instant litigation in 2019." Plaintiffs did indeed sell all the properties in the instant litigation in 2019 (with a slight correction that the William Street property was sold in 2020) as the Court may consider undisputed authentic information from the public record. The question becomes why where all these properties sold and at what prices in the same year or immediately thereafter?[1]

Summary judgment is warranted where the pleadings and discovery, as well as any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Federal Rules of Civil Procedure 56. The moving party has the burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Defendants do not meet the first requirement for granting of summary judgment as to Tortious Interference with Existing and Prospective Business or Contractual Relationships in that they present absolutely no discovery and / or affidavits as evidence that the sales contract between plaintiff Rock Property Holdings LLC and non-party Scranton Properties LLC was not interfered with. To the contrary the record is clear in that the Philo Street Property as owned by Rock Property Holdings LLC was condemned again

---

[1] The four expert reports finalized on May 22, 2022 opining on the diminution of value of the Philo, William, School and Willow Street properties after the actions of the City shed light on this topic.

11

on October 31, 2019 and the authentic public record shows that it was sold on November 7, 2019.

In response to summary judgment, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Construing the record liberally in favor of plaintiff, and as related to the Philo Street property as condemned on October 31, 2022 a mere seven (7) days prior to sale, it must be adduced that such an erroneous condemnation had an adverse effect on the sale (with specific damages to be outlined in front of a jury of the peers).

### IX. Punitive Damages

To prevail as related to punitive damages against state actors in Section 1983 cases, in their individual capacities, "conduct [must] be shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).

For the same reasons as set forth above as to Patrick Hinton's testimony on the record of attempted concoctions of excuses and the reverberations of his actions as related to unconstitutional acts, summary judgement must be denied as the evidence points to evil motive and at the least reckless or callous indifference to the federally protected rights of plaintiffs.

## X. CONCLUSION

**WHEREFORE,** for the reasons set forth above, plaintiffs request this Honorable Court enter an Order denying defendant's motion for Summary Judgment as related to the defendants and counts mentioned above.

Date: September 16, 2022

RESPECTFULLY SUBMITTED:

*[signature]*

VSEVOLOD GARANIN
PRO SE
5 Witherspoon Way
Marlboro, NJ 07746
(917) 434-1765 - Telephone
(347) 331-0941 – Fax
Steve@GCapHoldings.com - Email

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VSEVOLOD GARANIN, et al.<br>　　　　　　　Plaintiffs<br>vs.<br>CITY OF SCRANTON, et al.<br>　　　　　　　Defendants | CIVIL ACTION-LAW<br><br>No.: 3:19-CV-1275<br><br>ELECTRONICALLY FILED |

**Certificate of Service**

I, **VSEVOLOD GARANIN**, Pro Se, hereby certify that on the 16th day of September, 2022, I caused the foregoing **SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** to be filed via the Court's ECF system as authorized under Federal Rule 5(b)(2)(E) and local rule 5.6 of the United States District Court for the Middle District of Pennsylvania to the following:

Jenna Kraycer Tuzze, Esq.
Attorney I.D. No.: 324116
Oliver, Price & Rhodes
Email: jmk@oprlaw.com

/s/ John M. Price
John M. Price, Esq.
Attorney I.D. No.: 316108
Oliver, Price & Rhodes
Email: jmp@oprlaw.com