## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **VSEVOLOD GARANIN, et al.** | : | **Civil No. 3:19-CV-1275** |
| | : | |
| **Plaintiffs,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CITY OF SCRANTON, et al.** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

## I.  Introduction

Pending before the court is the defendants' motion for summary judgment. (Doc. 91). The plaintiffs, Vsevolod Garanin and his affiliated entities, filed this lawsuit against the City of Scranton and several individual City officials, alleging violations of their civil rights with respect to rental properties Garanin owned in Scranton, Pennsylvania. The plaintiffs' remaining claims consist of violations of procedural and substantive due process, equal protection, and the First Amendment, a Monell[1] claim against the City, as well as related state law claims for malicious prosecution and tortious interference.[2] For their part, the defendants contend that

---

[1] Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

[2] To the extent Garanin asserts that there is a Fourth Amendment claim remaining, we dismissed this claim as to the individual defendants, and it is well settled that where there is no constitutional violation, caselaw "precludes a finding of municipal liability." Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003)

their actions did not violate the plaintiffs' civil rights, and further, that they are entitled to qualified immunity.

After consideration, for the reasons set forth below, the defendants' motion for summary judgment will be granted in part and denied in part.

## II.   **Background**[3]

During the relevant time period, the plaintiff, Vsevolod Garanin, owned and operated Garanin Properties LCC, Ferndrive LCC, Auric Investment Holdings LLC, and Rock Property Holdings LLC. Auric Investments owned and operated an apartment building at 300-302 William Street in Scranton, Pennsylvania ("William Street property"); Ferndrive owned and operated two rental properties, one at 614 Willow Street in Scranton ("Willow Street property") and one at 126-128 School Street in Scranton ("School Street property"); and Rock Property Holdings owned and operated an apartment building at 1208-1210 Philo Street in Scranton ("Philo Street property"). Garanin's amended complaint alleges that the defendants—the City of Scranton and several individual City officials—violated his civil rights and state law when they condemned his properties and refused him permits.

---

(finding that "municipal liability will only lie where municipal action actually caused an injury").

[3] The factual background of this Memorandum Opinion is taken from the parties' submissions to the extent those submissions are consistent with the evidence of record. (Docs. 91-94, 100, 103, 107).

Thus, in September of 2018, Auric contracted to replace the roof of the William Street property and received a permit for the work in early October 2018. However, the property was condemned on October 27, 2018 after city officials received a call about a leaking roof and a wet ceiling tile falling on a child, who was taken to the hospital thereafter. Garanin and Auric received notice of the condemnation on October 31, 2018, which advised Garanin that the ceiling was leaking and there was exposed wire; there were no smoke or carbon monoxide detectors in the apartment; and that the tenant was using the oven as a heat source because of an issue with the baseboard heating. Auric appealed this condemnation, which the Board of Housing Appeals upheld. While the appeal was pending, Garanin contends that city officials harassed the tenants to vacate the property. This ultimately led to the city issuing Auric two Prohibited Occupancy citations in January and February of 2019.[4]

With respect to the Philo Street property, Inspector Carmona condemned one unit of the property on February 2, 2019, after the tenants complained about a lack of heat in the apartment and the smell of gas, and after UGI "red-tagged" a furnace

---

[4] Auric was found not guilty of the January 2019 citation and was initially found guilty of the February 2019 citation. Auric appealed to the Lackawanna Court of Common Pleas, which upheld the magisterial district court's finding of guilty. On appeal, the Pennsylvania Superior Court held that the judgment entered by the Common Pleas Court was a nullity without legal effect for lack of jurisdiction, as Auric was not represented by counsel, and quashed the appeal.

in the second-floor unit due to a gas leak. Rock Property appealed the condemnation, but the Board of Housing Appeals upheld the condemnation. The plaintiffs assert that the appeal was initially delayed by Hinton refusing to accept a signature from Rock Property's authorized agent. Thereafter, in March of 2019, the plaintiffs received a letter informing them that the Philo Street property was not properly registered under the City's rental registration ordinance, and that they had 72 hours to comply with the registration requirements. This notice also informed the plaintiffs that failure to comply with the ordinance would result in a six-month closure of the property. With respect to this closure, the parties' narratives starkly contrast with one another—the defendants contend that the property was never registered, and on April 10, 2019, the property was closed pursuant to the rental registration ordinance; the plaintiffs contend that payment for the rental registration was accepted on April 3, 2019, but the property was then closed for failure to register on April 10, 2019.

Similarly, Ferndrive's Willow Street property was closed in January of 2019 for failure to register under the rental registration ordinance. Defendant Uher stated that initially a complaint was made regarding the property, and while she was unaware whether that complaint was ever investigated, she ultimately closed the property when she realized the rental registration had not been paid. Unlike the Philo Street property, Ferndrive was not given an opportunity to pay the outstanding fees prior to the closure. Ferndrive appealed the closure, which was ultimately upheld by

the Board of Housing Appeals. However, Garanin asserts that similar to the Philo Street appeal, this appeal process was delayed by Hinton, who refused to accept a signature from Ferndrive's authorized agent.

Finally, with respect to the School Street property, in September of 2018, the City denied a permit application due to unpaid rental registration fees. This property had been condemned, and Garanin claims that in order to lift the condemnation, work needed to be performed at the property. Hinton withheld the permit based on the unpaid rental registration fees, and Garanin never appealed the denial of the permit. Ultimately, in 2019, Garanin sold all of the properties involved in this suit.

The amended complaint also alleges that during the relevant time, Garanin and his entities were subject to disparate treatment from the City and its officials. He claims that other property owners in the Scranton area at times had unpaid rental registration fees and were not denied work permits, nor were their buildings closed. He further asserts that some of these actions taken by the City were motivated by his appeals of the City's actions and his filing of lawsuits in violation of the First Amendment.

Thus, the plaintiffs brought this civil rights action on July 23, 2019, and filed an amended complaint on January 7, 2020, asserting violations of procedural and substantive due process, equal protection, the First Amendment, and protections against unreasonable searches and seizures. In addition, the complaint sets forth

claims for Monell liability, malicious prosecution, and tortious interference with existing and prospective business and contractual relationships.

The defendants filed a motion to dismiss the amended complaint, which we granted in part and denied in part. (Docs. 62-63). As a result of this ruling the claims remaining in this case are as follows: a procedural due process claim against the City and Hinton as to all properties, Defendant Uher as to the Willow Street and Philo Street properties, and Defendant Carmona as to the Philo Street property (Count I); a substantive due process claim against all defendants (Count II); an equal protection claim against all defendants (Count III); a First Amendment claim against all defendants (Count IV); a Monell claim against the City (Count VI); a malicious prosecution claim under Pennsylvania state law against all defendants except Defendant Courtright (Count VII); and a tortious interference claim against all defendants other than Defendant Courtright (Count VIII).

The defendants have now filed a motion for summary judgment on the remaining claims. (Doc. 91). They assert that there are no genuine disputes of material fact with respect to these claims, and alternatively, that they are entitled to qualified immunity on the federal claims. However, as we will discuss, we find that there are genuine issues of material fact with respect to several of the plaintiffs' claims. In addition, with respect to these isolated claims, we conclude that qualified immunity is not appropriate at this time. Accordingly, for the reasons set forth below,

the defendants' motion will be granted in part and denied in part as follows: the motion will be granted with respect to the procedural due process claim based on the emergency condemnations of the William Street and Philo Street properties, as well as the denial of the work permit for the School Street property; the substantive due process claim; the Equal Protection claim; the First Amendment Claim; the malicious prosecution claim; and the tortious interference claim as it relates to the condemnations of the William Street and Philo Street properties. However, the motion will be denied with respect to the procedural due process claim involving the closures of the Willow Street and Philo Street properties under the rental registration ordinance; the <u>Monell</u> claim against the City; the tortious interference claim as to the closures of the Willow Street and Philo Street properties pursuant to the rental registration ordinance; and the punitive damages claim.

## III.   <u>Standard of Review – Motion for Summary Judgment</u>

The defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co.</u>

v. Dentsply Int'l, Inc., 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id., at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla

of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon

bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985) (citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc. v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is against these legal benchmarks that we assess the defendants' motion for summary judgment.

## IV.   **Discussion**

As we have noted, the defendants contend that the plaintiffs have not set forth evidence showing a genuine dispute of material fact as to these federal and state law claims. Alternatively, the defendants assert that they are entitled to qualified immunity with respect to the plaintiffs' federal claims. However, as we will discuss below, we find that there are genuine disputes of material fact as to several claims lodged by the plaintiffs, although some of these claims fail as a matter of law. Thus, as discussed in more detail below, the motion for summary judgment will be granted in part and denied in part.

### A. **Procedural Due Process**

The defendants have moved for summary judgment on the plaintiffs' due process claims, arguing that Garanin and his entities received notice of the condemnations and closures of the properties, and thus, he received all the process

he was due. Moreover, they assert that with respect to the William Street and Philo Street condemnations, the plaintiffs were not entitled to any predeprivation process because an emergency existed to condemn the property.

It has long been settled law that where a state can feasibly provide a predeprivation hearing before taking property, it generally must do so. See, e.g., Fuentes v. Shevin, 407 U.S. 67, 80-84, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972) (hearing required before issuance of a writ allowing repossession of property). It is also true that in some cases involving exigent circumstances requiring officials to act quickly, a predeprivation hearing may be deemed unnecessary and in such cases the existence of a post-deprivation remedy may be adequate to protect a property owner's due process interests. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (" '[T]he necessity of quick action by the State or the impracticality of providing any predeprivation process' " may mean that a post-deprivation remedy is constitutionally adequate) (quoting Parratt v. Taylor, 451 U.S. 527, 539, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)); see also Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (holding that a deprivation of a constitutionally protected property interest caused by a state employee's random, unauthorized conduct does not give rise to a § 1983 procedural due process claim, unless the state fails to provide an adequate post-deprivation remedy).

There is no question, therefore, that summary administrative enforcement action may be taken in emergency situations. Where competent evidence allows an official to reasonably believe that an emergency exists, discretionary invocation of emergency procedures will only amount to a constitutional violation if the action is arbitrary or an abuse of discretion. Elsmere Park Club, L.P. v. Town of Elsmere, 542 F.3d 412, 418 (3d Cir. 2008). "Where government officials are faced with a decision in which a failure to act quickly could have serious health consequences, perfection or near perfection is not the standard." Id. at 420. However, officials "may not arbitrarily invoke the emergency exception to avoid providing predeprivation due process." Philly Auto, Inc. v. City of Phila., 362 F. Supp. 3d 272, 278 (E.D. Pa. 2019).

In the instant case, with respect to the condemnations of the William Street property and the Philo Street property, we believe that summary judgment in favor of the defendants is appropriate. Indeed, as to the William Street property, this property was condemned after city officials received a call to the property and were advised that the ceiling was leaking, and a child had been struck by a falling ceiling tile and was taken to a hospital. Moreover, the notice of condemnation indicated there was exposed wire throughout the unit while the ceiling was leaking. While Garanin contends that he had a permit to repair and replace the roof at the time of this incident, this does not negate the fact that there was a visible and real danger to

the tenants at the time city officials were called to the property. Thus, in these circumstances, we cannot conclude that a predeprivation process was required, and Garanin received an adequate postdeprivation remedy when he appealed the condemnation to the Board of Housing Appeals, which ultimately upheld the condemnation. Accordingly, the defendants are entitled to summary judgment on this claim.

Similarly, the condemnation of the Philo Street property occurred after the City had received complaints of lack of heat and the smell of gas in the second-floor unit. Upon arriving at the property, Defendant Carmona stated that the tenants had complained about the lack of heat, and that UGI had ultimately "red tagged" the furnace and shut off the gas to remedy the gas leak. Thus, Defendant Carmona was faced with an exigent situation where the second-floor unit was lacking heat in February, and UGI had shut off the gas to the unit. We cannot conclude under these circumstances that the plaintiffs were entitled to a predeprivation remedy before Carmona condemned the unit. For his part, Garanin stated that he called a contractor, Ed Goodfield, to remedy the problem with the furnace, and thus, the problem was remedied that day and no emergency existed. However, it is undisputed that at the time Carmona was called to the property, Mr. Goodfield was not present and there was no gas or heat in the unit. Accordingly, we find that the property was condemned on the basis of an emergency, and the defendants were not required to provide a

predeprivation remedy under these circumstances. Moreover, the plaintiffs were provided with a postdeprivation remedy, of which they availed themselves but were ultimately unsuccessful. Thus, summary judgment will be granted in favor of the defendants on this claim.

We reach a similar conclusion with respect to the plaintiffs' claim regarding the denial of a permit for the School Street property. Indeed, the defendants denied a work permit for the School Street property because the property was not properly registered under the rental registration ordinance. (Doc. 94, at 306). The School Street property had been condemned, and Garanin sought a permit to fix the property in order to lift the condemnation, but the City would not approve the permit until the rental registration fees were paid. On this score, however, Garanin cannot claim that he was denied due process because he did not avail himself of the post-deprivation process that was in place. See Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate"). Indeed, it is undisputed that Garanin did not even attempt to appeal the denial of this work permit. Having failed to avail himself of the due process afforded to him Garanin cannot now claim that he was denied due process. Accordingly, this claim fails as a matter of law.

However, while we have found that the condemnations meet the emergency exception to the typical requirement of a predeprivation process when one is feasible, the closures of the plaintiffs' properties based solely upon the rental registration ordinance do not meet such an exception. On this score, the plaintiffs assert that the defendants closed the Philo Street and Willow Street properties for six months under this ordinance because the properties were not properly registered. This Ordinance requires that every property owner must register the units with the code enforcement officer, and that failure to register would result in the owner's license to rent, as well as the license for the property, being suspended for six months. With respect to the Philo Street property, Rock Property was notified on March 29, 2019 that the property was not registered and that it had 72 hours to comply with the requirement, and was notified on April 10, 2019 that the property would be closed for 6 months. (Doc. 94, at 300-03). This property was closed even though Garanin contends that he timely complied with the registration requirement a factual issue that appears to be disputed.  Regarding the Willow Street property, Ferndrive received a letter on January 24, 2019 stating that the City had received complaints about the lack of heat at the property, and the property was not registered and thus, would be closed for 6 months. (Id., at 305).

On this score, as to these specific incidents we find that there is a genuine dispute of material fact as to whether Garanin and his entities were provided with

adequate due process procedures. At the outset, with respect to the Philo Street property, the notice to Rock Property gave the entity 72 hours to comply with the registration requirements. According to Garanin, he paid the outstanding fees, and payment was accepted on April 3, 2019, but the City closed the building under the Ordinance on April 10, 2019, citing both the failure to register and complaints regarding the property. (Doc. 100-14, at 10). Thus, at the very least, there is a genuine dispute of material fact regarding whether Garanin and Rock Property were actually in violation of the Ordinance at the time the City closed the Philo Street property.

As to the Willow Street property, Ferndrive was not given the same 72-hour period in which to settle any unpaid fees as Rock Property was given. Rather, the notice to Ferndrive regarding the Willow Street property cited complaints by tenants of a lack of heat, coupled with the fact that the building was not registered. (Doc. 100-6, at 1). Notably, in her deposition, Uher conceded that she was unaware if the complaints regarding the lack of heat were investigated, but that she closed the property when she became aware that it was not properly registered at the direction of Hinton. (Doc. 94-4, at 9-10). Thus, we are faced with a situation in which the plaintiffs were not provided with a predeprivation remedy and it is entirely unclear whether there was an actual emergency justifying immediate action since this alleged exigency was not investigated. Moreover, we are unaware of any situation

in which unpaid fees, standing alone, would constitute an emergency sufficient to deprive a property owner of a predeprivation process.   Thus, given that the Fourteenth Amendment calls for a predeprivation process where it is feasible, see, e.g., Fuentes, 407 U.S. at 80-84, we cannot conclude that the defendants' post-deprivation process here satisfies procedural due process requirements. At the very least, with respect to these episodes there are disputes of fact as to whether the plaintiffs were in violation of the Ordinance, in addition to whether the properties were closed pursuant to the Ordinance or whether they were closed based on the other circumstances set forth in the notices.

The defendants contend that they are entitled to qualified immunity on these claims. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law,

qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." <u>Mullenix</u>, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." <u>Id.</u> (quoting <u>Ashcroft v. Al-Kidd</u>, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting <u>Al-Kidd</u>, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." <u>Id.</u> (quoting <u>Al-Kidd</u>, 563 U.S. at 742). On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. <u>See Davis v. Scherer</u>, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); <u>Sherwood v. Mulvihill</u>, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears

the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

In this case, we cannot conclude that the defendants are entitled to qualified immunity with respect to the closures of the Willow Street and Philo Street properties pursuant to the rental registration ordinance. Rather, we find that it was clearly established that, absent an emergency, due process requires a predeprivation hearing prior to the taking of property. See Fuentes, 407 U.S. at 80-84. Moreover, while the defendant contend that the City officials were following the Ordinance that required closure of a property for unpaid rental registration fees, as we have

explained, there is a factual dispute as to whether these properties were actually closed pursuant to the rental registration ordinance. Indeed, Defendant Uher cited a tenant's complaint of a lack of heat in the Willow Street property, which she conceded she was unaware if the complaint was actually investigated or substantiated. Additionally, the notice regarding the closure of the Philo Street property similar references complaints made by tenants in addition to the unpaid rental fees. Thus, there are questions of fact as to the underlying motivations for the closures, and this question of fact is properly reserved for the finder of fact.

When we are presented with factual disputes regarding the subjective motivation for some official actions, government officials often may not avail themselves of qualified immunity as a matter of law. As the Third Circuit has observed in this regard:

> Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury. See Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995) (qualified immunity may turn on disputed issues of fact); Karnes v. Skrutski, 62 F.3d 485, 491 (3d Cir.1995) ("While the qualified immunity defense is frequently determined by courts as a matter of law, a jury should decide disputed factual issues relevant to that determination."). Motive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor. See Mitchell v. Forsyth, 472 U.S. 511, 529, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985) (improper intent is a pure question of fact); Walker v. Horn, 286 F.3d 705, 710 (3d Cir.2002).

<u>Monteiro v. City of Elizabeth</u>, 436 F.3d 397, 405 (3d Cir. 2006). Accordingly, the defendants are not entitled to qualified immunity with respect to these claims.

Thus, with respect to the plaintiff's procedural due process claims, we will grant summary judgment to the defendants with respect to the condemnations of the William Street property and Philo Street property, as well as the denial of the permit for the School Street property. However, we find that there are genuine issues of fact with respect to the closures of the Philo Street and Willow Street properties pursuant to the rental registration ordinance. Accordingly, summary judgment is denied with respect to those claims.

### B. **Substantive Due Process**

The plaintiffs also assert a substantive due process claim against the defendants, claiming that the defendants' actions—condemning and closing his properties, interfering with his appeals, denying permits, and issuing citations— were arbitrary, and that the defendants had no justification other than to harass the Garanin and his entities.

The legal standards governing substantive due process claims are both familiar and exacting. In this context: "The Supreme Court has emphasized that the 'touchstone of due process' is protection against arbitrary government action. Government action is 'arbitrary in the constitutional sense' when it is 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' "

L.R. v. Sch. Dist. of Philadelphia, 836 F.3d 235, 246 (3d Cir. 2016) (footnotes omitted). Thus:

> To establish a substantive due process claim, a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience ... Deprivation violates due process only when it shocks the conscience, which encompasses only the most egregious official conduct ... while the meaning of the [shocks the conscience] standard varies depending upon factual context, merely alleging an improper motive is insufficient, even where the motive is unrelated to the merits of the underlying decision. Chainey v. Street, 523 F.3d 200, 219–20 (3d Cir. 2008) (internal citations and quotations omitted).

L.H. v. Pittston Area Sch. Dist., 130 F.Supp.3d 918, 928–29 (M.D. Pa. 2015), aff'd, 666 F. App'x. 213 (3d Cir. 2016).

The Third Circuit has provided some guidance in terms of what might constitute conscience-shocking conduct. For example, evidence of "corruption or self-dealing" might meet this standard. Eichenlaub v. Twp. of Indiana, 385 F.3d 274, 286 (3d Cir 2004). Likewise, a municipal action that reflects "bias against an ethnic group" could shock the conscience. Id. The Court suggested that a "virtual taking" of property might satisfy this standard. Id. In addition, a municipality's land-use decision that is animated by "hostility to constitutionally-protected activity on the premises" might be sufficiently outrageous, in some situations, to rise to conscience-shocking conduct. Id. at 285 (citing Assocs. in Obstetrics & Gynecology v. Upper Merion Twp., 270 F.Supp.2d 633 (E.D. Pa. 2003) (denying motion to dismiss

complaint in which the plaintiff alleged that the municipality selectively enforced zoning regulations to restrict access to legal abortions).

Substantive due process claims face long odds, must meet exacting standards of proof, and following review of the record we find that the plaintiffs have not met these standards. The plaintiffs have alleged that the defendants actions regarding the condemnations, closures, and denial of a permit were arbitrary and were taken in bad faith and motivated by animus toward Garanin and his entities. However, as we have explained, an allegation of animus or improper motive, alone, is not enough to satisfy the "conscience-shocking" bar for a substantive due process claim. Chainey, 523 F.3d at 219–20. Further, to the extent that Garanin and his entities base this substantive due process claim on any alleged animus based on the plaintiffs' First Amendment activity or on the alleged disparate treatment the plaintiffs received, as we will discuss in more detail below, we find that the plaintiffs have not set forth sufficient evidence to support these constitutional claims. Accordingly, the defendants are entitled to summary judgment with respect to the substantive due process claims.

### C. **Equal Protection**

The defendants also assert they are entitled to summary judgment with respect to the plaintiffs' class of one Equal Protection claim. On this score, Garanin contends

that the City and its officials treated him differently than other property owners in violation of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Garanin's Equal Protection argument in this case advances what is called a "class of one" claim, an assertion that the plaintiff has been treated differently than all others in some invidious fashion. In this regard, "cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (citing Sioux City Bridge Co. v. Dakota County, 260 U.S. 441 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336 (1989)). However, the legal standard to be applied when examining such a claim in the context of a land use dispute is an exacting one, and has been defined by the Third Circuit in the following terms:

> The Supreme Court has held that a " 'class of one' " can attack intentionally different treatment if it is " 'irrational and wholly arbitrary.' " Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (internal citations omitted) (per curiam) .... The "irrational and wholly arbitrary" standard is doubtless difficult for a plaintiff to meet in a zoning dispute, id. at 565-66, 120 S.Ct. 1073, 1074 (Breyer, J., concurring), and we do not view an equal

protection claim as a device to dilute the stringent requirements needed
to show a substantive due process violation.

Eichenlaub, 385 F.3d at 286-87.

In order to sustain a "class of one" equal protection claim: "a plaintiff must

allege that (1) the defendant treated him differently from others similarly situated,

(2) the defendant did so intentionally, and (3) there was no rational basis for the

difference in treatment. Hill v. Borough of Kutztown, 455 F.3d 225 (3d Cir. 2006).

So, to state a claim for 'class of one' equal protection, a plaintiff must at a minimum

allege that he was intentionally treated differently from others similarly situated by

the defendant and that there was no rational basis for such treatment." Phillips v.

Cty. of Allegheny, 515 F.3d 224, 243 (3d Cir. 2008).

In the instant case, Garanin alleges that he was treated differently than other

property owners in Scranton when his properties were closed for unpaid rental

registration fees. He points specifically to two other Scranton-area property

owners—Ethel Martinez and the Jewish Discovery Center, Inc.—who he claims did

not have their properties closed although there were outstanding rental registration

payments with respect to their properties. However, the evidence which Garanin

directs us to—letters denying the application for work permits at these properties—

do not stand for the proposition that he asserts. Indeed, these letters simply indicate

that a work permit was denied for 1930 Bristol Court and for 722 North Main

Avenue in June of 2019 because there were outstanding rental registration fees at

these properties. (Docs. 100-12, 100-13). These letters do not indicate whether these properties were closed due to unpaid rental registration fees. They do, however, indicate that these property owners were actually treated similarly to Garanin and his entities, who also had work permits denied due to outstanding rental registration fees. Thus, these letters appear to undercut Garanin's class of one theory, as the evidence shows that property owners were treated similarly with respect to the denial of work permits for outstanding rental registration fees.

Moreover, Garanin himself testified that the Board of Housing Appeals treated other property owners in the same manner he was treated. On this score, Garanin identified Alex Brunelle as a friend and property owner in Scranton and stated that "we became friends over the years based on our similar experiences with the City of Scranton." (Doc. 94, at 76). Further, Garanin testified that the Board of Housing Appeals "rubber stamps" the City's decisions, stating that the Board:

> [Doesn't] even listen to the argument and say upheld . . . . Well, just--*actually not just my experience; everybody's experience.* Alex Brunelle, Adam Giufridda, everybody whoever appeals to the housing appeals board from my understand of -- I don't think one housing appeals board has -- ruling -- or the city of Scranton ruling has been reversed. Every single time they just say upheld.

(Id., at 113-14) (emphasis added). Accordingly, Garanin's own testimony cuts against his claim that the defendants treated him differently than other similarly situated property owners in Scranton. Given that Garanin has not provided evidence

from which we could find a genuine dispute of fact regarding this Equal Protection class of one claim, summary judgment will be granted in favor of the defendants.

### D. First Amendment

The plaintiffs also bring a claim under the First Amendment, arguing that the defendants took action against him, such as issuing the Prohibited Occupancy citations and closing his properties for unpaid rental fees, because he filed a federal lawsuit in 2014 and because he appealed the condemnations and closures. Garanin further asserts that some of these actions were taken because Garanin refused a settlement related to the Philo Street property.

In order for a plaintiff to establish a claim for First Amendment retaliation, he must show: "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Mirabella v. Villard, 853 F.3d 641, 649 (3d Cir. 2017) (quoting Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)).

We find that the plaintiffs' claims on this score fail as a matter of law. At the outset, we note that the allegations in the Second Amendment Complaint are virtually identical to those in the original complaint, in that the plaintiffs allege retaliation in the form of denying a permit for the School Street property, issuing the Prohibited Occupancy citations for the William Street property, and failing to

reschedule an inspection at the Philo Street property, and allege that these actions were taken in retaliation for filing a federal lawsuit in 2014. (Doc. 22, Count IV). We dismissed this claim at the motion to dismiss stage, citing a failure of the plaintiffs to allege a causal connection between his protected activity and the alleged retaliatory acts, but allowed the plaintiffs leave to amend. (Doc. 19, at 31-34).

However, the plaintiffs have still failed to set forth sufficient allegations and evidence to state a claim for First Amendment retaliation. As we reasoned in our prior Memorandum Opinion, the only allegation that even remotely sets forth a claim for retaliatory action is Defendant Hinton's failure to reschedule an inspection at the Philo Street property. As to this allegation, as we previously explained, the email exchange between Garanin and Uher regarding the inspection only leaves us to speculate as to Hinton's intentions regarding his refusal to schedule the inspection. The plaintiffs have not provided us with any additional evidence from which a reasonable factfinder could find a causal connection. Accordingly, the plaintiffs have failed to set forth allegations or evidence of a causal connection between the protected activity and Hinton's actions, and thus, this First Amendment claim fails as a matter of law. Thus, we will grant summary judgment in favor of the defendants on this claim.

### E. *Monell* **Claim**

The defendants also contend that they are entitled to judgment as a matter of law on the plaintiffs' Monell claim against the City. The plaintiffs bring this claim alleging that former Mayor Courtright and Hinton were policymakers for the City, whose policies resulted in the constitutional violations alleged in this case. They also assert a failure-to-train theory, contending that the failure to train city officials resulted in violations of the plaintiffs' constitutional rights.

Plaintiffs seeking to hold municipal defendants liable for alleged civil rights violations must meet an exacting burden of pleading and proof. It is well settled that local governmental entities may not be held liable under section 1983 for the acts of others under a theory of *respondeat superior* or vicarious liability. Ashcroft v. Iqbal, 556 U.S. 662 (2009); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991). Instead, such an agency may only be held liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Thus, to sustain a claim against this municipal defendant, a plaintiff must "identify a . . . 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). This custom must

be "so widespread as to have the force of law." Id., at 404; see also Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (a policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law") (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted)). The plaintiff must further "allege that a 'policy or custom' of [the defendants] was the 'moving force' behind the [constitutional] violation." Grayson v. Mayview State Hosp., 293 F.3d 103, 107 (3d Cir. 2002) (citing Brown, 520 U.S. at 404). A municipality can be held liable on the basis of failure to train when "that failure amounts to 'deliberate indifference . . . [of the constitutional] rights of persons. . . .' " Woloszyn v. County of Lawrence, 396 F.3d 314, 324 (3d Cir. 2005) (citations omitted). There must also be a causal nexus, in that the " 'identified deficiency in [the] training program must be closely related to the ultimate [constitutional] injury.' " Id., at 325 (citations omitted). Therefore, analysis of a claim under Monell requires separate analysis of two distinct issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so whether the [municipality] is responsible for that violation." Collins v. City of Harker Heights, Texas, 503 U.S. 115, 120 (1992).

A municipal defendant may also be liable for constitutional violations resulting from inadequate training or supervision of its employees if the failure to train amounts to a custom of the municipality. However, failure-to-train claims also

must meet precise and demanding legal criteria. Such a failure must "amount[] to deliberate indifference to the constitutional rights of persons with whom the [officials] come in contact." <u>Colburn</u>, 946 F.2d at 1028 (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 388 (1989)). Proving agency liability on a theory of deliberate indifference is an especially difficult showing for a plaintiff to satisfy where the plaintiff has alleged that insufficient training or supervision has caused constitutional violations. <u>Reitz v. County of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997). Such a showing requires that "(1) . . . lawmakers know that employees will confront a similar situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." <u>Carter v. City of Phila.</u>, 181 F.3d 339, 357 (3d Cir. 1999). Moreover, the plaintiff proceeding on such a theory must establish that the agency's "deliberate conduct . . . was the 'moving force' behind the injury alleged." <u>Reitz</u>, 125 F.3d at 145 (quoting <u>Brown</u>, 520 U.S. at 404). Therefore, the need for training, supervision, or other corrective action to avoid imminent deprivations of a constitutional right "must be so apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." <u>Horton v. City of Harrisburg</u>, No. 06-2338, 2009 U.S. Dist. LEXIS 63428, *13 (M.D. Pa. Jul. 23, 2009) (quoting <u>Strauss v. Walsh</u>, No. Civ. A. 01-3625, 2002 WL 32341791, *3 (E.D. Pa. Dec. 17, 2002)). Additionally, in order to recover

for municipal liability on a failure-to-train theory, the alleged failure must be "closely related to the ultimate (constitutional) injury." Woloszyn, 396 F.3d at 325.

The Supreme Court has reaffirmed the exacting guiding principles which define institutional civil rights liability based upon a failure to train or oversee institutional employees. In Connick v. Thompson, 563 U.S. 51, 60-1, 131 S. Ct. 1350, 1359-60 (2011), the Court described the parameters of agency liability in the following terms:

> A municipality or other local government may be liable . . . if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation. See Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 692 (1978). But, under § 1983, local governments are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). . . . . They are not vicariously liable under § 1983 for their employees' actions. . . . . Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Monell, 436 U.S. at 691. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. . . . . These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479-80. In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. See Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell"). To satisfy the statute, a municipality's failure to train its employees in a relevant

respect must amount to "deliberate indifference to the rights of persons
with whom the [untrained employees] come into contact." . . . . Only
then "can such a shortcoming be properly thought of as a city 'policy
or custom' that is actionable under § 1983. . . . . " '[D]eliberate
indifference' is a stringent standard of fault, requiring proof that a
municipal actor disregarded a known or obvious consequence of his
action." . . . . Thus, when city policymakers are on actual or constructive
notice that a particular omission in their training program causes city
employees to violate citizens' constitutional rights, the city may be
deemed deliberately indifferent if the policymakers choose to retain
that program.

Id. (some citations deleted).

In the instant case, while we regard this as a close case, we find that there are
genuine issues of material fact with respect to this claim against the City. On this
score, at the very least there is a question of fact as to whether Courtright and Hinton
were policymakers as it pertains to the policies alleged in this case—*e.g.*, closing
and condemning properties. Moreover, there is evidence in the record from which a
jury could find that the policies of the City, as implemented by Hinton, were the
driving force behind the constitutional violations alleged in this case.

On this score, we have already explained that the closure of properties without
a predeprivation notice or hearing, absent some emergency, is a violation of
procedural due process. Defendant Uher testified that as to at least one property, the
closure of the Willow Street property, she was directed by Hinton to close the
property for unpaid rental registration fees, although she further stated that normally,
she would not close a property solely based on unpaid registration fees. (Doc. 94-4,

at 4). Moreover, it is undisputed that Hinton as the Director, or Oleski as the Deputy Director, provided final authorizations for these closings. (Doc. 100-1, at 7-8).

Accordingly, while we regard this as a close case, we conclude that summary judgement would be inappropriate on this claim, where there are disputed facts as to the policies and procedures regarding closures of rental properties, as well as the employees' knowledge as to the proper procedures. Thus, summary judgment will be denied as to the <u>Monell</u> claim.[5]

## F. **Malicious Prosecution**

The plaintiffs also bring claims under Pennsylvania state law for malicious prosecution stemming from the Prohibited Occupancy citations issued to Auric regarding the tenants of the William Street property.

Under Pennsylvania state law, in order to establish and ultimately prevail on a claim for malicious prosecution, a plaintiff must show: "(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; and (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice." <u>Bristow v.</u>

---

[5] Our analysis as to the defendants' qualified immunity argument in the context of procedural due process equally applies to the <u>Monell</u> claim brought against the City, in that we find that factual disputes, including as to the defendants' motivations, preclude summary judgment on the basis of qualified immunity.

Clevenger, 80 F.Supp.2d 421, 432 (M.D. Pa. 2000) (quoting Hilfirty v. Shipman, 91

F.3d 573, 579 (3d Cir. 1996)); Haefner v. Burkey, 626 A.2d 519, 521 (Pa. 1993).

While the plaintiffs have provided evidence showing that the criminal

proceedings ended in Auric's favor, and that the citations may have been issued

without probable cause and for a malicious purpose, there is one fatal flaw to the

plaintiffs' malicious prosecution claim—the person who initiated the criminal

citation is not a named defendant. Indeed, it is undisputed that Andrew Sunday, a

code enforcement officer who is not named as a defendant, issued the Prohibited

Occupancy citations. Hinton testified that code enforcement officers have the

authority to issue such citations, and that he did not, as the Director, sign off on the

citations in Garanin's case. Thus, there is no evidence that the named defendants

instituted this prosecution. This is a fatal claim. Accordingly, the plaintiffs cannot

show that the defendants initiated a criminal proceeding against him, and this

malicious prosecution claim fails with respect to the named defendants as a matter

of law.

### G. Tortious Interference with Existing or Prospective Contractual Relationships

The plaintiffs finally assert a claim against the defendants for tortious

interference with existing or prospective contractual relationships, arguing that the

defendants' actions in closing and condemning his properties interfered with his

ability to profit from his rental properties. On this score,

> The necessary elements of the cause of actions are (1) the existence of a contractual relationship between the complainant and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage as a result of the defendant's conduct.

Walnut Street Assoc., Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 98 (Pa. Super. Ct. 2009). (citations omitted). In addition, a defendant may be liable for interfering with a prospective, as well as existing, contractual relationship, if he acts to intentionally prevent the prospective relationship from occurring. Maverick Steel CO., L.L.C. v. Dick Corp./Barton Malow, 54 A.3d 352, 355 (Pa. Super. Ct. 2012).

Regarding the third element—the absence of privilege or justification—the plaintiffs must show "not only that a defendant acted intentionally to harm the plaintiff, but also that those actions were improper." Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc., 150 A.3d 957, 966 (Pa. Super Ct. 2016). Factors to be considered in this inquiry include

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

Id. at 966 (quoting Restatement (Second) of Torts § 767 (Am. Law Inst. 1979)).

On this score, we find that this claim fails as to the condemnations of the William Street and Philo Street properties. Indeed, as we have explained, the

defendants had ample justification for the condemnation of these properties because they were condemned for emergencies, and thus, their actions were not improper. Additionally, with respect to Garanin's claim that the defendants interfered with a prospective sale between Rock Property and Scranton Properties LLC, there is simply no evidence in the record from which we could even infer a prospective contractual relationship existed, as the plaintiffs simply rely on the allegations in the amended complaint. More is needed at the summary judgment stage. Accordingly, as to these claims, summary judgment will be granted in favor of the defendants.

With respect to the Willow and Philo Street properties, while the defendants argue that there is no evidence of interference with existing or prospective contractual relationships, it is undisputed that there were tenants living in both properties at the time these properties were closed pursuant to the rental registration ordinance. Moreover, we have already explained that there is a factual dispute as to whether these closures were justified or proper. Additionally, as we have stated, there is a question of fact as to the defendants' motivations for the actions taken with respect to these properties. Accordingly, given the myriad factual disputes with respect to the closures of these properties, summary judgment would be inappropriate as to this tortious interference claim.

## H. **Punitive Damages**

Finally, the defendants contend that they are entitled to summary judgment as to the plaintiffs' claims for punitive damages against the individual defendants in their individual capacities. However, given the factual disputes that we have identified with respect to the defendants' motivations, summary judgment on this punitive damages claim would be premature.

Punitive damages are available in a proper case asserted pursuant to § 1983. See Smith v. Wade, 461 U.S. 30, 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). A plaintiff in a § 1983 case may qualify for a punitive damages award when the defendant's conduct is, at a minimum, reckless or callous. See Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989); see also Wade, 461 U.S. at 47-48, 103 S.Ct. 1625 (holding that a finding of "recklessness, serious indifference to or disregard for the rights of other, or even gross negligence" permitted an award of punitive damages). Although punitive damages awards may also be available if the defendant's conduct is intentional or motivated by evil motive, it need not meet that higher standard. Specifically, as the United States Supreme Court has stated, "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Wade, 461 U.S. at 56, 103 S.Ct. 1625.

In the instant case, there is evidence in the record from which a jury could find that the defendants, in taking the actions against Garanin and his entities to close his properties, acted with at least "recklessness, serious indifference to or disregard for the rights of other, or even gross negligence." At this juncture, where we have identified several factual disputes with respect to the defendants' motivations, summary judgment on this punitive damages claim is premature.

Accordingly with one exception the motion for summary judgment will be denied as to the punitive damages claim. This punitive damages claim fails with respect to the municipal defendant since it has long been held: "that a municipality is immune from punitive damages under 42 U.S.C. § 1983."City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271, 101 S. Ct. 2748, 2762, 69 L. Ed. 2d 616 (1981). Therefore summary judgment will be granted in favor of the municipal defendant on this punitive damages claim but denied with respect to the individual defendants.

## V.   Conclusion

Accordingly, for the reasons outlined in this Memorandum Opinion, the defendants' motion for summary judgment (Doc. 91) will be granted in part and denied in part as follows:

The motion will be granted with respect to the procedural due process claim based on the emergency condemnations of the William Street and Philo Street properties, as well as the denial of the work permit for the School Street property;

the substantive due process claim; the Equal Protection claim; the First Amendment Claim; the malicious prosecution claim; and the tortious interference claim as it relates to the condemnations of the William Street and Philo Street properties.

The motion will be denied with respect to the procedural due process claim involving the closures of the Willow Street and Philo Street properties under the rental registration ordinance; the <u>Monell</u> claim against the City; and the tortious interference claim as to the closures of the Willow Street and Philo Street properties pursuant to the rental registration ordinance.

Finally, summary judgment will be granted in favor of the municipal defendant on Garanin's punitive damages claim but denied with respect to the individual defendants.

An appropriate order follows.


                                                    <u>s/ Martin C. Carlson</u>
                                                    Martin C. Carlson
                                                    United States Magistrate Judge

DATED: December 22, 2022